USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  ___9/20/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARCO ANTONIO SANCHEZ, *individually* :
*and on behalf of similarly situated persons,* :
                                                                :
                            Plaintiffs,                         :
                                                                :          **OPINION AND ORDER**
             -against-                                          :
                                                                :          16-CV-4472 (JLC)
JYP FOODS INC., *d/b/a* KRISTALBELLI, :
*and* JOON KIM,                                                 :
                                                                :
                            Defendants.                         :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Marco Antonio Sanchez worked as a busboy and bar-back at

Kristalbelli restaurant in Manhattan from April 2012 to July 2015.  In June 2016,

Sanchez brought this collective/class action against defendants Jyp Foods Inc.,

doing business as Kristalbelli, and its chief executive officer Joon Kim, alleging

violations of the Fair Labor Standards Act and New York Labor Law, for failure to

pay minimum wages and overtime compensation, as well as provide wage

statements and wage notices.  Six others opted into the lawsuit in 2017.  Although

defendants initially participated in this case by answering the complaint and

attending a settlement conference (reaching a settlement in principle), neither

defendant ever consummated the settlement or otherwise communicated with the

Court after May 2017.  In light of defendants' disappearance, plaintiffs now move to

strike the answer and for default judgment in the amount of $129,582.27

($105,186.23 in damages and $24,396.04 in attorneys' fees and costs).

For the reasons that follow, the Court grants plaintiffs' motion to strike defendants' answer and for a default judgment. However, some evidence in plaintiffs' submissions related to the damages they seek is illegible and their calculations are often flawed. Consequently, the amount of damages, including attorneys' fees and costs, that plaintiffs are entitled to is $12,207.35 less than that sought in their submissions. As explained below, the Court concludes that plaintiffs are entitled to $117,374.92 ($102,299.92 in damages and $15,075 in attorneys' fees and costs).[1]

## I.　　Procedural History

On June 14, 2016, Sanchez filed his collective/class action complaint against defendants. Complaint ("Compl."), Dkt. No. 1. On August 12, 2016, defendants filed their answer. Dkt. No. 14. On November 28, 2016, Sanchez moved for conditional certification of his collective action and for approval of a collective action notice. Dkt. Nos. 23–26. Sanchez's motion for conditional certification was granted on January 10, 2017, and on January 18, 2017, the proposed collective action notice was approved for mailing to potential plaintiffs. Dkt. Nos. 33, 38. In March and April 2017, six opt-in plaintiffs—Levon J. Augustin ("Augustin"), Emad Newaz ("Newaz"), Jeffrey Santiago ("Santiago"), Mahamaduo Sillah ("Sillah"), Hyun Jun Kim ("Kim"), and Augustine Uzowuru ("Uzowuru")—who worked as bussers, servers, bartenders, and runners at Kristalbelli from 2014 to 2017, consented to

---

[1] The appendix to this Opinion includes both a chart summarizing plaintiffs' request for damages and a separate chart reflecting the amounts awarded by the Court.

becoming party plaintiffs in this case.  *See* Plaintiffs' Amended Memorandum of Law ("Pls. Mem."), Dkt. No. 84 at 1; Dkt. Nos. 42–47, 50.

On June 16, 2016, this case was referred to me for settlement.  Dkt. No. 7. On May 31, 2017, the parties appeared before me for a settlement conference and reached a settlement in principle.  Dkt. No. 51.  The parties thereafter consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c) (Dkt. No. 52), and I directed them to submit their proposed settlement agreement to me for approval. Dkt. No. 51.

Plaintiffs filed a motion for settlement approval on July 31, 2017.  Dkt. No. 60.  On August 9, 2017, I approved the proposed settlement agreement, and directed the parties to submit a fully executed settlement agreement by September 11, 2017. Dkt. No. 62.  Having not received an executed agreement by the court deadline, on September 18, 2017, I ordered the parties to advise me how they wished to proceed, and whether there was any reason I could not issue an order of dismissal *sua sponte*.  Dkt. No. 63.

On September 26, 2017, the parties submitted a status report in which plaintiffs sought leave to file an amended complaint, and defense counsel sought to move to withdraw as counsel due to a "loss of communication" with Kim.  Dkt. No. 64.[2]  On November 1, 2017, I held a conference to address the parties' requests.

---

[2]  Defense counsel reported to the Court in his motion to withdraw that his last contact with Kim had been on July 7, 2017, and that since then he had been unable to communicate with Kim despite nearly two dozen attempts to do so.  Dkt. No. 69 ¶¶ 6–8, 12.

Kim did not appear despite multiple efforts by the Court and defense counsel to inform him of his obligation to attend the conference. Dkt. Nos. 65, 67, 71–72, and 73. After the November 1 hearing, I issued an order granting defense counsel's motion to withdraw. Dkt. No. 74. In the same order, I required Jyp Foods to appear by new counsel within 30 days of my order, and Kim to advise the Court whether he would be appearing by counsel or proceeding *pro se*. *Id.* I advised plaintiffs that if defendants failed to appear, they could seek a default judgment. *Id.* Despite my directives and warning, defendants to date have failed to appear to defend this action.

On December 28, 2017, plaintiffs moved to strike the answer and for default judgment. Dkt. Nos. 78–80. After reviewing their motion papers, I concluded that plaintiffs had not provided a basis upon which I could establish damages with reasonable certainty. Accordingly, I directed plaintiffs to supplement their motion with additional evidence, including detailed affidavits, authorities, and legal arguments, to support their damage calculations. Dkt. No. 81.

On May 29, 2018, plaintiffs submitted an amended memorandum of law and a declaration from their counsel, with accompanying exhibits, including "excel spreadsheets calculating plaintiffs' damages by extrapolating [p]laintiffs' hours worked and pay from documents produced by defendants in discovery showing plaintiffs' dates of work, hours worked, and pay rates." Dkt. No. 84; Declaration of Gennadiy Naydenskiy dated May 29, 2018 ("Naydenskiy Decl."), Dkt. No. 85, ¶¶ 4–5, Ex. C: Plaintiffs' Damage Calculations ("Pls. Damage Calcs."), Dkt. No. 85-1

4

at 3–6; Ex. D: Defendants' Production ("Defs. Production"), Dkt. Nos. 85-1 to 85-11.[3]

In their most recent submissions, plaintiffs explain that their damages were calculated by "using the time and pay records provided by Defendant[s] prior to the default." Pls. Mem. at 8. Plaintiffs also clarify that their "corrected" damage calculations include "weekly minimum wage and overtime calculations, with cites to Defendants' produced documents by bate stamp." *Id.* Based on plaintiffs' corrected calculations—supported with information such as weekly start and end dates, weekly hours worked, minimum wage hours worked, overtime hours worked, rates of pay, applicable minimum wage rates, minimum wages owed, and overtime wages owed—they seek $105,186.23 in damages and $24,396.04 in attorneys' fees and costs. Pls. Mem. at 8–9.[4] Defendants have not responded to this motion.

## II. Discussion

### A. Sanctions

Rule 16(f) of the Federal Rules of Civil Procedure allows a court to impose sanctions when a party fails to appear at a court-ordered conference or fails to obey other pretrial orders, including sanctions authorized by Rule 37(b)(2)(A)(ii)–(vii). Fed. R. Civ. P. 16(f). Such sanctions may include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R.

---

[3] Pin cites to Exhibit C of the Naydenskiy Declaration refer to the pagination of the document as they appear on the ECF filing because the original document does not have page numbers.

[4] Although plaintiffs request $105,186.<u>22</u> in damages in their memorandum of law (Pls. Mem. at 9), the accurate sum of their request—based on each individual plaintiff's damages—is $105,186.<u>23</u>.

Civ. P. 37(b)(2)(A)(iii), (vi).  Although Rule 37 sanctions are "a harsh remedy to be used only in extreme situations," *Agiwal v. Mid Island Mort. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted), they "protect other parties to the litigation from prejudice resulting from a party's noncompliance" and "serve other functions unrelated to the prejudice suffered by individual litigants[,]" including specific and general deterrence.  *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 149 (2d Cir. 2010) (internal quotation marks and citations omitted).

The Second Circuit has articulated "[s]everal factors [that] may be useful in evaluating a district court's exercise of discretion" to impose sanctions pursuant to Rule 37, including: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Agiwal*, 555 F.3d at 302–03 (quoting *Nieves v. City of N.Y.*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).  These factors are not exclusive and none is dispositive, "[b]ecause the text of the rule requires only that the district court's orders be 'just,'" and "because the district court has 'wide discretion in imposing sanctions under Rule 37[.]'"  *S. New England Tel. Co.*, 624 F.3d at 144 (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted)).  After considering each factor, the Court concludes that striking the answer and entering a default judgment against defendants are appropriate sanctions in this case.

1.  **Willfulness**

In his motion to withdraw, defense counsel Steven Seltzer reported to the
Court that his last communication with defendants took place on July 7, 2017 and
that he had been unable to communicate with them despite nearly two dozen
attempts to do so. Dkt. No. 69, ¶¶ 6–8, 12.[5] The Court held a hearing on November
1, 2017, at which it considered and granted defense counsel's motion to withdraw.
Defendants failed to appear at the November 1 hearing despite multiple notices
from both the Court and defense counsel. They also ignored numerous court orders,
including a November 2, 2017 Order that directed Jyp Foods to retain new counsel
and Kim to appear by counsel or *pro se.*

Defendants have plainly been aware of this lawsuit (they initially answered
the complaint and participated in a settlement conference) but have nonetheless
failed to defend this action. Such conduct is reflective of willfulness and warrants
harsh sanctions. *See, e.g., Campos v. Quentin Market Corp.*, No. 16-CV-5303 (RER),
2017 WL 9253412, at *3 (E.D.N.Y. Nov. 21, 2017) (willfulness found when parties
ignored court order to retain new counsel and failed to appear at conferences),

---

[5] In his declaration, Seltzer stated: "I transmitted emails to Mr. Kim concerning
this matter on July 11th, July 18th, July 19th, July 21st (two emails), July 24th, July
28th and September 25, 2017. In the course of my email correspondence, I
transmitted the settlement agreement in this matter to Mr. Kim for signature. I
did not receive a response to any of these emails." Dkt. No. 69, ¶ 7. He also stated:
"Additionally, between July 7, 2017 and the present, both the undersigned and my
office staff attempted to reach Mr. Kim by telephone on at least 15 occasions. Mr.
Kim did not answer any of those telephone calls and has not returned any of the
calls. The calls were placed to the telephone number for Mr. Kim that I used to
successfully communicate with him on all prior occasions during my representation
of the defendants." *Id.* ¶ 8.

*adopted by*, Order dated Mar. 13, 2018; *see also Castillo v. Zishan, Inc.,* No. 16-CV-6166 (JGK), 2017 WL 3242322, at *2 (S.D.N.Y. July 28, 2017) (corporate defendant that failed to retain new attorney and failed to appear at scheduled conference acted willfully).

### 2.     Efficacy of Lesser Sanctions

The Court concludes that a less severe sanction than the entry of a default judgment would not be appropriate in this case because defendants have failed to defend the action since the settlement conference in May 2017.  While lesser sanctions should be considered before the Court proceeds to strike an answer and issue a default judgment against a non-compliant party (*see, e.g., Agiwal*, 555 F.3d at 302), defendants' repeated noncompliance with court orders and failure to engage with the Court indicates that any lesser sanction would be "an exercise in futility[.]" *Koch v. Rodenstock,* No. 06-CV-6586 (BSJ) (DF), 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010), *adopted by*, 2010 WL 2010900 (S.D.N.Y. May 18, 2010).

### 3.     Duration of Non-compliance

Defendants' failure to appear and comply with court orders spans almost a year and qualifies as an amount of time sufficient to warrant striking the answer and entering a default judgment.  *See, e.g., Local Union No. 40 of the Intern. Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265–66 (S.D.N.Y. 2015) ("[D]urations of time as brief as a few months have been held to weigh in favor of dispositive sanctions.  And periods of six months or more weigh even more heavily toward such remedies.") (collecting cases).

Defendants failed to submit an executed, court-approved settlement agreement by September 11, 2017; respond to the Court's September 18, 2017 Order to provide a status update; attend the November 1, 2017 hearing where their counsel moved to withdraw; appear pursuant to the Court's November 2, 2017 Order; and oppose plaintiffs' motion to strike the answer and for default judgment. Accordingly, the duration of defendants' failure to defend this action and comply with this Court's orders warrants sanctions.

### 4. History of Warnings

As far back as November 2017, defendants were on notice that failing to participate in the litigation and defend against plaintiffs' lawsuit would result in sanctions. After the November 1, 2017 hearing, the Court directed Jyp Foods to appear by new counsel and Kim to advise whether he would be appearing with counsel or proceeding *pro se*. In its order dated November 2, 2017, the Court warned defendants that if they failed to appear, plaintiffs would be permitted to move to strike the answer and seek a default judgment. *Id.* Despite the Court's warnings, defendants have still failed to appear.

Moreover, given plaintiffs' motion to strike the answer and for default judgment was submitted on December 28, 2017 and supplemented on May 29, 2018, defendants have been on notice for many months of plaintiffs' intention to initiate default proceedings should they fail to engage in the litigation. The Court's warnings, coupled with the other factors, weigh in favor of striking the answer and entering a default judgment at this stage of the proceedings. *See, e.g., Campos*,

2017 WL 9253412 at *3 (answer struck and default entered where court warned defendants of sanctions); *Zurita v. Bergen Pizza Inc.*, No. 13-CV-1846 (KAM) (LB), 2015 WL 1602148, at *1 (E.D.N.Y. Apr. 2, 2015) (same).

## B.  Facts Established as a Result of Defendants' Default

Once a default has been established, as is the case here, the Court accepts as true all of the factual allegations in a complaint except the amount of damages.  *See generally City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (citation omitted); *see, e.g., Coach, Inc. v. Melendez,* No. 10-CV-6178 (BSJ) (HBP), 2011 WL 4542971 (S.D.N.Y. Sept. 2, 2011), *adopted by,* 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011). Having determined that defendants' noncompliance warrants an entry of a default judgment, the Court must "follow the procedure for entry of a default judgment as set forth in [Rule 55]." *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011). "Under the case law interpreting that rule, the default establishes [defendants'] liability as long as the complaint has stated a valid cause of action[.]" *Id.* (citations omitted).  Accordingly, the factual allegations contained in plaintiffs' complaint and the additional submissions filed by plaintiffs in their motion papers, except as to the amount of damages claimed, must be taken as true.  *See, e.g., Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y. 2014).

## 1.    Liability

Plaintiffs allege that defendants operated a restaurant, "grossed more than $500,000 in each of the last six calendar years[,]" and "engaged in interstate 'commerce' and/or in the 'production of goods' for 'commerce', within the meaning of 29 U.S.C. § 203 and the NYLL."  Compl. ¶¶ 12–13.  Kim, "who had and exercised the power to hire, fire, and control the wages and working conditions of the [p]aintiff[s]," managed and operated Jyp Foods.  Compl. ¶ 9.  Defendants were employers as defined by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and "employed 'employee[s]', including [p]laintiffs [and] each of the FLSA Collective Plaintiffs and Class Members."  *Id.* ¶ 12.

"Such allegations, coupled with [d]efendants' default, suffice to establish that [Jyp Foods and Kim] qualify as [p]laintiffs' 'employer' for purposes of [the] FLSA and NYLL, and therefore to impose joint and several liability on each of them for their respective violations of the wage laws." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011) (citing *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010) (on default judgment, finding both individual defendants and corporation liable under FLSA where complaint contained allegations of actions taken collectively by defendants); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (corporate officer considered to be employer under FLSA jointly and severally liable with corporation)).

## 2. Plaintiffs' Work Hours and Compensation at Kristalbelli

Defendants' own employment records, produced to plaintiffs during the litigation, reveal the following:

Sanchez worked from April 2012 to July 2015. Naydenskiy Decl., Ex. D: Defs. Production at DEF0002–294. His pay rate during most of his employment was $5.00 per hour, and he regularly worked more than 40 hours per week—anywhere between 40.25 and 62.75 hours per week. *Id.*

Augustin worked from June 2014 to March 2015. *Id.* at DEF0182–258. His pay rate was $5.00 per hour, and he regularly worked more than 40 hours per week—anywhere between 41.25 and 59.25 hours per week. *Id.*

Newaz worked from February to March 2015. *Id.* at DEF0248–50, 258–62. His pay rate was $5.00 per hour, and he worked 10.5, 37.25, 14.75, 15, and 6.75 hours per week, consecutively, throughout his five weeks of employment. *Id.*

Santiago worked from January to April 2015. *Id.* at DEF0244–268. His pay rate was $5.00 per hour, and he worked between 25.75 and 39.5 hours per week. *Id.*

Sillah worked from June 2016 to April 2017. *Id.* at DEF0338–380. His pay rate during most of his employment was $7.50 per hour, and he worked between 2.5 and 37.75 hours per week. *Id.*

Kim worked from April to July 2016. *Id.* at DEF0324–336. His pay rate during most of his employment was $7.50 per hour, and he worked between 7.25 and 39.75 hours per week. *Id.*

Uzowuru worked from March to July 2016. *Id.* at DEF0382–402. His pay rate during most of his employment was $7.50 per hour, and he worked between 13.25 and 45.5 hours per week. *Id.*

Defendants knowingly and willfully operated their business with a policy of not paying minimum wages and overtime pay and not providing wage statements and wage notices. Compl. ¶¶ 23–26, 29.

### 3. Defendants' Failure to Provide Wage Statements and Notices

Defendants failed to provide plaintiffs with wage statements at the time of each wage payment, with information required by NYLL: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. Compl. ¶¶ 40, 44, 57; *see also* NYLL § 195(3). Defendants also failed to provide plaintiffs with wage notices as required by NYLL § 195(1). Compl. ¶¶ 27, 40.

## C. Inquest into Damages

### 1. Burden of Proof on Damages

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "[E]ven when the defendant[s] default[ ] and [are] not present to object," plaintiffs have the burden of establishing their entitlement to "damages . . . based on admissible evidence." *House v. Kent Worldwide Mach. Works. Inc.,* 359 F. App'x 206, 207 (2d Cir. 2010). To establish damages upon default, plaintiffs must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir. 1992).

An employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" *Jiao v. Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 689 (1946)). "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden." *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (internal citations and quotation marks omitted), *adopted by,* Order dated Aug. 9, 2012 (Dkt. No. 20). Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Kernes v. Global Structures, LLC,* No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Feb. 9, 2016) (internal citations and quotation marks omitted) (alterations in original), *adopted by*, Order dated Mar. 1, 2016 (Dkt. No. 27).

The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "'as long as [the court has] ensured that there was a basis for the damages specified in the default judgment.'" *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)). The Court concludes here that "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman,* No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok,* 873 F.2d at 40), *adopted by,* 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).

Plaintiffs rely on "documents produced by Defendants in discovery" to support their request for damages. Naydenskiy Decl. ¶ 4, Ex. D: Defs. Production. Plaintiffs allege that the records provided to the Court are "a true and correct copy of Defendants' produced documents" and that their damages were calculated using the "time and pay records provided by Defendant[s] prior to the default." *Id.* ¶ 5, Ex. D: Defs. Production; Pls. Mem. at 8. Therefore, this is an unusual case in which defendants produced certain employment records—detailing "dates worked, hours worked, and rates of pay"—that expose their violations of federal and state wage-and-hour laws. *See* Naydenskiy Decl., Ex. D: Defs. Production. Despite the availability of this compelling evidence, plaintiffs' submissions are not optimal. Plaintiffs' counsel failed to provide any supporting affidavits or declarations from the plaintiffs themselves, despite the Court offering them a second chance to correct

the deficiencies in their initial inquest filings.  *See* Dkt. No. 81.  It would have been "best practices" to have made such submissions.  Nevertheless, the Court considers defendants' payroll records sufficient in these circumstances to support plaintiffs' request for damages.

### 2.    Statute of Limitations

As a threshold matter, based on defendants' records of plaintiffs' terms of work, the Court finds that there is no applicable statute of limitations defense here. The statute of limitations is six years under NYLL, two years under the FLSA for standard violations, and three years under the FLSA for willful violations.  *See* NYLL § 663(3); 29 U.S.C. § 255(a).

Sanchez began working for defendants in April 2012 and filed the complaint, raising claims under the FLSA and NYLL, on June 14, 2016.  Compl. ¶ 7; Naydenskiy Decl., Ex. D: Defs. Production at DEF0002.  Opt-in plaintiffs began working for defendants at various times throughout 2014 to 2016, and filed their consent forms to become party plaintiffs to this action in March and April 2017.  *See* Dkt. Nos. 42–47; Naydenskiy Decl., Ex. D: Defs. Production at DEF0182, 244, 248, 324, 338, 382.  Plaintiffs allege that defendants knowingly and willfully operated their business in violation of the FLSA and NYLL by failing to pay them the applicable minimum wages and overtime pay owed to them.  Compl. ¶¶ 23–25, 32, 48, 50, 53.

The Court accepts these allegations as true, given defendants' default.  *See, e.g., Herrara v. 12 Water St. Gourmet Cafe, Ltd.,* No. 13-CV-4370 (JMF) (RLE), 2016

WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016) (collecting cases), *adopted by,* 2016 WL

1268266 (S.D.N.Y. Mar. 31, 2016).  Therefore, plaintiffs' respective employment

periods are entirely covered by NYLL's six-year statute of limitations.

### 3. Minimum Wage and Overtime Pay Violations

#### a. Legal Standards

Under both federal and state law, employers must pay employees a statutory

minimum wage.  *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); 12 NYCRR § 146-1.2.

The FLSA requires employers to pay employees at least the federal minimum wage

for every hour worked, 29 U.S.C. § 206, or the state minimum wage if it exceeds the

federal minimum wage.  *See* 29 U.S.C. § 218(a).  Since 2009, the minimum wage

under the FLSA has been $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  During the

relevant period, the minimum wage under New York law has been as follows:

| Minimum Wage Rate | Relevant Period |
| --- | --- |
| $7.15 | from August 24, 2010 until December 30, 2013 |
| $8.00 | from December 31, 2013 until December 30, 2014 |
| $8.75 | from December 31, 2014 until December 30, 2015 |
| $9.00 | from December 31, 2015 until December 30, 2016 |
| $11.00 or $10.50 | $11 from December 31, 2016 until December 30, 2017 for "large" employers who employ 11 or more employees in the city of New York; or $10.50 for "small" employers who employ ten or less employees in the city of New York |

*See* NYLL § 652(1).

In addition, both federal and state law also require employers to pay

employees one and one-half times the minimum wage for time worked in excess of

40 hours per week.  29 U.S.C. § 207(a)(1); 12 NYCRR §§ 146-1.4, 142-2.2; *Kernes,*

2016 WL 880199, at *3 ("[A]n employee is entitled to be paid for overtime hours (i.e.,

hours exceeding 40 per week), at a 'rate not less than one and one-half times the

regular rate at which [the employee] is employed.'") (quoting 29 U.S.C. § 207(a)(1));

*Herrara,* 2016 WL 1274944, at *5 (citing 29 U.S.C. § 207(a) and 12 NYCRR

§ 146-1.4). Appropriate overtime wages are "calculated by multiplying [an

employee's] regular hourly rate (or the minimum wage rate, if his regular hourly

rate falls below the minimum wage) by one and one-half. That rate is then

multiplied by the number of hours in excess of forty hours the employee worked

each week." *Rosendo v. Everbrighten Inc.,* No. 13-CV-7256 (JGK) (FM), 2015 WL

1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by,* 2015 WL 4557147 (S.D.N.Y. July

28, 2015).

Although "plaintiffs may not recover under both the FLSA and the NYLL for

the same injury, courts allow plaintiffs to recover under the statute that provides

for the greatest relief." *Ni v. Bat-Yam Food Servs. Inc.,* No. 13-CV-7274 (ALC)

(JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *see also, e.g., Castillo v. RV

Transp., Inc.,* No. 15-CV-0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11,

2016); *Maldonado,* 2012 WL 1669341, at *5. Here, the Court will award damages

under NYLL because it provides the greatest relief under the minimum wage laws

(as well as for overtime, liquidated damages, and statutory damages).[6]

---

[6] Plaintiffs alleged a "spread of hours" claim in the complaint (Compl. at 12–13,
¶¶ 1-6), but abandoned that claim in their motion to strike the answer and for
default judgment (Dkt. Nos. 78–80, 84–85).

### b.    Application

### i.    Sanchez's Unpaid Wages

During his employment, which lasted from April 2012 to July 2015, Sanchez alleges that he was not paid minimum wages or proper overtime.  Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 5–6; Ex. D: Defs. Production at DEF0002–294. Defendants' records include Sanchez's rate of pay and the hours that he worked during his employment.  Naydenskiy Decl., Ex. D: Defs. Production at DEF0002– 294.  Sanchez's hourly rate during most of his employment was $5.00.  *Id.*[7]  This rate was below the applicable minimum wage of $7.25 from April 2012 to December 30, 2013; below the applicable minimum wage of $8.00 from December 31, 2013 to December 30, 2014; and below the applicable minimum wage of $8.75 from December 31, 2014 to July 2015.  Based on defendants' own employment records, the Court calculates Sanchez's award for unpaid wages as follows:

---

[7] From April 22, 2012 to December 1, 2012, Sanchez's hourly rate ranged from $6.00 to $8.00.  *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0002–48.

| Sanchez Damages | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| period | total hours worked | minimum wage hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages | overtime paid | applicable overtime rate | overtime hours worked | unpaid overtime | total unpaid wages owed |
| 4/22/12 to 6/23/12 | 471.75 | 362.5 | $6.00 or $7.00 | $ 7.25 | $ 144.06 | $0 or $10.50 or $3.50 | $ 10.88 | 109.25 | $ 683.14 | $ 827.20 |
| 6/24/12 to 9/29/12 | 320.75 | 307.25 | $ 8.00 | $ 7.25 | $ - | $3.50 or $4.00 | $ 10.88 | 13.5 | $ 92.13 | $ 92.13 |
| 9/30/12 to 12/1/12 | 295.5 | 268.75 | $ 7.00 | $ 7.25 | $ 67.19 | $ 3.50 | $ 10.88 | 26.75 | $ 197.42 | $ 264.60 |
| 12/2/12 to 12/29/12 | 172.5 | 151.25 | $ 5.00 | $ 7.25 | $ 340.31 | $2.50 or $3.50 | $ 10.88 | 21.25 | $ 167.58 | $ 507.89 |
| 12/30/12 to 3/30/13 | 574.25 | 506.25 | $ 5.00 | $ 7.25 | $ 1,139.06 | $ 2.50 | $ 10.88 | 68 | $ 569.84 | $ 1,708.90 |
| 3/31/13 to 6/29/13 | 538.5 | 475.25 | $ 5.00 | $ 7.25 | $ 1,069.31 | $ 2.50 | $ 10.88 | 63.25 | $ 530.04 | $ 1,599.35 |
| 6/30/13 to 10/5/13 and 12/29/13 | 548.5 | 504.5 | $ 5.00 | $ 7.25 | $ 1,135.13 | $ 2.50 | $ 10.88 | 44 | $ 368.72 | $ 1,503.85 |
| 12/31/13 to 3/29/14 | 573.75 | 505.5 | $ 5.00 | $ 8.00 | $ 1,516.50 | $ 2.50 | $ 12.00 | 68.25 | $ 620.25 | $ 2,136.75 |
| 3/30/14 to 6/28/14 | 527 | 495 | $ 5.00 | $ 8.00 | $ 1,485.00 | $ 2.50 | $ 12.00 | 32 | $ 279.00 | $ 1,764.00 |
| 6/29/14 to 9/27/14 | 582.25 | 506.5 | $ 5.00 | $ 8.00 | $ 1,519.50 | $ 2.50 | $ 12.00 | 75.75 | $ 719.63 | $ 2,239.13 |
| 9/28/14 to 12/30/14 | 648.75 | 540.25 | $ 5.00 | $ 8.00 | $ 1,620.75 | $ 2.50 | $ 12.00 | 108.5 | $ 840.75 | $ 2,461.50 |
| 12/31/14 to 3/28/15 | 576 | 475.75 | $ 5.00 | $ 8.75 | $ 1,784.06 | $ 2.50 | $ 13.13 | 100.25 | $ 1,062.66 | $ 2,846.72 |
| 3/29/14 to 7/18/15 | 579.25 | 566.75 | $ 5.00 | $ 8.75 | $ 2,125.31 | $ 2.50 | $ 13.13 | 12.5 | $ 132.81 | $ 2,258.13 |
| | | | | | | | | | | |
| TOTALS | | | | | $13,946.19 | | | | $ 6,263.94 | $20,210.13 |

See Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 5–6; Ex. D: Defs. Production at DEF0002–294.

Specifically, Sanchez is entitled to $13,946.19 in unpaid minimum wages. Further, because Sanchez worked more than 40 hours per week during his employment, he is eligible for overtime compensation. Sanchez is entitled to overtime at a rate of one and one-half times the applicable minimum wage rate for each overtime hour worked. In 2012 and 2013, his overtime rate should have been

$10.88 ($7.25 x 1.5); in 2014, his overtime rate should have been $12.00 ($8.00 x

1.5); and in 2015, his overtime rate should have been $13.13 ($8.75 x 1.5).  However,

for most of his employment, defendants only paid Sanchez $2.50 for each overtime

hour worked.  Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 5–6; Ex. D: Defs.

Production at DEF0052–294.[8]  Therefore, Sanchez is entitled to overtime

compensation in the amount of $6,263.94.  In sum, the Court concludes that

Sanchez should be awarded $20,210.13 in unpaid wages.[9]

### ii.   Augustin's Unpaid Wages

During his employment, which lasted from June 2014 to March 2015,

Augustin alleges that he was not paid minimum wages or proper overtime.

Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at

DEF0182–258.  Defendants' records include Augustin's rate of pay and the hours

that he worked during his employment.  Naydenskiy Decl., Ex. D: Defs. Production

at DEF0182–258.  Augustin's hourly rate of $5.00 was below the applicable

minimum wage of $8.00 from June 2014 to December 30, 2014, and below the

applicable minimum wage of $8.75 from December 31, 2014 to March 2015.  Based

---

[8]  The Court adjusts overtime calculations from April 22, 2012 to December 29, 2013
because Sanchez was paid at varying rates ranging from $0 to $10.50 per overtime
hour.  *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0002–48.

[9]  Although Sanchez requests $20,552.86 in total unpaid wages (Naydenskiy Decl.,
Ex. C: Pls. Damage Calcs. at 6), the Court cannot award overtime compensation for
certain periods of time between June 15 and August 30, 2014, because portions of
the underlying records are illegible.  *See* Naydenskiy Decl., Ex. D: Defs. Production
at DEF0182–202.

on defendants' own employment records, the Court calculates Augustin's award for

unpaid wages as follows:

| period | total hours worked | minimum wage hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages | overtime rate paid per hour | applicable overtime rate | overtime hours worked | unpaid overtime | total unpaid wages owed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Augustin Damages** | | | | |
| 6/15 to 7/26/14 | 207.25 | 206.5 | $ 5.00 | $ 8.00 | $ 619.50 | information missing | $ 12.00 | 0.75 | information unknown | information unknown |
| 7/27 to 8/30/14 | 240.5 | 200 | $ 5.00 | $ 8.00 | $ 600.00 | information missing | $ 12.00 | 40.5 | information unknown | information unknown |
| 8/31 to 9/27/14 | 171.5 | 143 | $ 5.00 | $ 8.00 | $ 429.00 | $ 2.50 | $ 12.00 | 28.5 | $ 293.88 | $ 722.88 |
| 11/9 to 11/29/14 | 116.5 | 111.25 | $ 5.00 | $ 8.00 | $ 333.75 | $ 2.50 | $ 12.00 | 5.25 | $ 49.88 | $ 383.63 |
| 11/30 to 12/30/14 | 175.25 | 169.5 | $ 5.00 | $ 8.00 | $ 508.50 | $ 2.50 | $ 12.00 | 5.75 | $ 54.63 | $ 563.13 |
| 12/31/14 to 1/31/15 | 136.45 | 136.45 | $ 5.00 | $ 8.75 | $ 511.69 | $ 2.50 | $ 13.13 | 0 | $ - | $ 511.69 |
| 2/8 to 3/14/15 | 190.5 | 166.5 | $ 5.00 | $ 8.75 | $ 624.38 | $ 2.50 | $ 13.13 | 24 | $ 255.00 | $ 879.38 |
| **TOTALS** | | | | | $3,626.81 | | | | $ 653.38 | $ 4,280.19 |

*See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at

DEF0182–258.

Specifically, Augustin is entitled to $3,626.81 in unpaid minimum wages.

Further, because Augustin worked more than 40 hours per week during his

employment, he is eligible for overtime compensation. Augustin is entitled to

overtime at a rate of one and one-half times the applicable minimum wage rate for

each overtime hour worked. In 2014, his overtime rate should have been $12.00

($8.00 x 1.5), and in 2015, his overtime rate should have been $13.13 ($8.75 x 1.5).

However, defendants only paid him $2.50 for each overtime hour worked. *Id.* at

DEF0188, 194–204, 208, 226, 234, 252–56.[10] Therefore, Augustin is entitled to overtime compensation in the amount of $653.38. In sum, the Court concludes that Augustin should be awarded $4,280.19 in unpaid wages.[11]

### iii. Newaz's Unpaid Wages

During his employment, which lasted from February to March 2015, Newaz alleges that he was not paid minimum wages. Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at DEF0248–50, 258–62. Defendants' records include Newaz's rate of pay and the hours that he worked during his employment. Naydenskiy Decl., Ex. D: Defs. Production at DEF0248–50, 258–62. Newaz's hourly rate of $5.00 was below the applicable minimum wage of $8.75. Based on defendants' own employment records, the Court concludes that Newaz is eligible for minimum wage compensation in the amount of $315.94 and should be awarded that amount in unpaid wages:

---

[10] During the week ending on September 20, 2014, defendants did not pay Augustin any overtime. *Id.* at DEF0208. The Court accounts for this deviation in its calculations.

[11] Although Augustin requests $4,630.63 in total unpaid wages (Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3), the Court cannot award overtime compensation between June 15 and August 30, 2014, because portions of the underlying records related to that period are illegible. *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0182–202.

| Newaz Damages | | | | |
|---|---|---|---|---|
| period | total hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages |
| 2/1 to 2/14/15 | 47.75 | $ 5.00 | $ 8.75 | $ 179.06 |
| 3/8 to 3/28/15 | 36.5 | $ 5.00 | $ 8.75 | $ 136.88 |
| | | | | |
| **TOTALS** | | | | $ 315.94 |

*See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at

DEF0248–50, 258–62.[12]

### iv.    Santiago's Unpaid Wages

During his employment, which lasted from January to April 2015, Santiago

alleges that he was not paid minimum wages.  Naydenskiy Decl., Ex. C: Pls.

Damage Calcs. at 3; Ex. D: Defs. Production at DEF0244–268.  Defendants' records

include Santiago's rate of pay and the hours that he worked during his employment.

Naydenskiy Decl., Ex. D: Defs. Production at DEF0244–268.  Santiago's hourly rate

of $5.00 was below the applicable minimum wage of $8.75.  Based on defendants'

own employment records, the Court concludes that Santiago is eligible for minimum

wage compensation in the amount of $1,401.56 and should be awarded that amount

in unpaid wages:

---

[12]  Defendants' records establish that Newaz did not work from February 15, 2015
to March 7, 2015.

| Santiago Damages | | | | |
|---|---|---|---|---|
| period | total hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages |
| 1/18 to 2/21/2015 | 168 | $ 5.00 | $ 8.75 | $ 630.00 |
| 3/8 to 3/28/15 | 96.25 | $ 5.00 | $ 8.75 | $ 360.94 |
| 3/29 to 4/18/15 | 109.5 | $ 5.00 | $ 8.75 | $ 410.63 |
| | | | | |
| **TOTALS** | | | | $ 1,401.56 |

*See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at DEF0244–268.

### v.     Sillah's Unpaid Wages

During his employment, which lasted from June 2016 to April 2017, Sillah alleges that he was not paid minimum wages. Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at DEF0338–380. Defendants' records include Sillah's rate of pay and the hours that he worked during his employment. Naydenskiy Decl., Ex. D: Defs. Production at DEF0338–380. Sillah reports that he was paid the applicable minimum wage rate for 17.25 hours of work at the beginning of his employment from June 18 to July 1, 2016 (although he was not paid minimum wages for 7.5 hours of work during this same employment period). *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0338–340. However, his hourly rate changed to $7.50 and was below the applicable minimum wage of $9.00 from July 2 to December 30, 2016, and below the applicable minimum wage of $11.00 from December 31, 2016 to the end of his employment in April 2017. *See*

Naydenskiy Decl., Ex. D: Defs. Production at DEF0340–380.[13]  Based on

defendants' own employment records, the Court concludes that Sillah is eligible for

minimum wage compensation in the amount of $1,431.13 and should be awarded

that amount in unpaid wages:

| Sillah Damages | | | | |
|---|---|---|---|---|
| period | total hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages |
| 6/18 to 7/1/16 | 24.75 | $9.00 for 17.25 hours and $7.50 for 7.5 hours | $ 9.00 | $ 11.25 |
| 7/2 to 7/29/16 | 126 | $ 7.50 | $ 9.00 | $ 189.00 |
| 7/30 to 8/26/16 | 129 | $ 7.50 | $ 9.00 | $ 193.50 |
| 8/27 to 9/30/16 | 126.75 | $ 7.50 | $ 9.00 | $ 190.13 |
| 10/1 to 10/28/16 | 91.75 | $ 7.50 | $ 9.00 | $ 137.63 |
| 10/29 to 12/30/16 | 110.25 | $ 7.50 | $ 9.00 | $ 165.38 |
| 12/31/16 to 1/27/17 | 61 | $ 7.50 | $ 11.00 | $ 213.50 |
| 1/28 to 2/24/17 | 33 | $ 7.50 | $ 11.00 | $ 115.50 |
| 2/25 to 3/31/17 | 51.5 | $ 7.50 | $ 11.00 | $ 180.25 |
| 4/15 to 4/28/17 | 10 | $ 7.50 | $ 11.00 | $ 35.00 |
| | | | | |
| **TOTALS** | | | | $ 1,431.13 |

*See* Naydenskiy Decl., Ex.C: Pls. Damage Calc. at 3; Ex. D: Defs. Production at

DEF0338–380.

---

[13] As discussed *supra*, beginning on December 31, 2016, the applicable minimum
wage rate under NYLL was determined by location and the number of employees
employed.  *See* NYLL § 652(1).  Kristalbelli was located in Manhattan (Compl. ¶ 8).
Thus, the minimum wage rate for New York City employees applies.  However,
plaintiffs did not provide information about the number of employees employed by
Kristalbelli so that the Court could determine whether the applicable minimum
wage rate is $11.00 (for "large" employers who employ 11 or more employees in the
City of New York) or $10.50 (for "small" employers who employ ten or less
employees in the City of New York).  *See* NYLL § 652(1).  Nevertheless, in light of
defendants' default, the Court gives plaintiffs the benefit of the doubt and applies
the $11.00 rate requested by plaintiffs.  Naydenskiy Decl., Ex. C: Pls. Damage
Calcs. at 3.

### vi.    Kim's Unpaid Wages

During his employment, which lasted from April to July 2016, Kim alleges that he was not paid minimum wages. Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3; Ex. D: Defs. Production at DEF0324–336. Defendants' records include Kim's rate of pay and the hours that he worked during his employment. Naydenskiy Decl., Ex. D: Defs. Production at DEF0324–336. Kim reports that while he was paid minimum wages for 77.75 hours of work at the beginning of his employment, from April 2 to April 22, 2016 (although he was not paid minimum wages for 4 hours of work during this same employment period), his hourly rate changed to $7.50 and was below the applicable minimum wage of $9.00 from April 23, 2016 to the end of his employment in July 2016. Based on defendants' own employment records, the Court concludes that Kim is eligible for minimum wage compensation in the amount of $401.63 and should be awarded that amount in unpaid wages:

| Kim Damages | | | | | |
|---|---|---|---|---|---|
| period | total hours worked | regular hourly rate | | applicable minimum wage | unpaid minimum wages |
| 4/2 to 4/22/16 | 81.75 | $9.00 for 77.75 hours and $7.50 for 4 hours | | $   9.00 | $     6.00 |
| 4/23 to 5/27/16 | 156 | $ | 7.50 | $   9.00 | $   234.00 |
| 5/28 to 6/24/16 | 77.5 | $ | 7.50 | $   9.00 | $   116.25 |
| 6/25 to 7/8/16 | 30.25 | $ | 7.50 | $   9.00 | $     45.38 |
| | | | | | |
| **TOTALS** | | | | | $   401.63 |

*See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3. Ex. D: Defs. Production at DEF0324–336.

### vii.    Uzowuru's Unpaid Wages

During his employment, which lasted from February to July 2016, Uzowuru alleges that he was not paid minimum wages or overtime pay.  Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3–4; Ex. D: Defs. Production at DEF0382–402. Defendants' records include Uzowuru's rate of pay and the hours that he worked during his employment.  Naydenskiy Decl., Ex. D: Defs. Production at DEF0382– 402.  Uzowuru reports that he was paid minimum wages from the start of his employment in March 2016 through the week ending on April 15, 2016.  However, Uzowuru's hourly rate changed to $7.50 and was below the applicable minimum wage of $9.00 from April 16, 2016 to the end of his employment in July 2016.  Based on defendants' own employment records, the Court calculates Uzowuru's award for unpaid wages as follows:

| period | total hours worked | regular hourly rate | applicable minimum wage | unpaid minimum wages | overtime paid | overtime hourly rate | overtime hours worked | unpaid overtime | total unpaid wages owed |
|---|---|---|---|---|---|---|---|---|---|
| 2/27 to 4/15/16 | 254.5 | $ 9.00 | $ 9.00 | $ - | $ - | $ 13.50 | 6.5 | $ 87.75 | $ 87.75 |
| 4/16 to 5/27/16 | 202.75 | $ 7.50 | $ 9.00 | $ 304.13 | $ - | $ - | 0 | $ - | $ 304.13 |
| 5/28 to 6/24/16 | 126.25 | $ 7.50 | $ 9.00 | $ 189.38 | $ - | $ - | 0 | $ - | $ 189.38 |
| 6/25 to 7/15/16 | 68.75 | $ 7.50 | $ 9.00 | $ 103.13 | $ - | $ - | 0 | $ - | $ 103.13 |
|  |  |  |  |  |  |  |  |  |  |
| **TOTALS** |  |  |  | $ 596.63 |  |  |  | $ 87.75 | $ 684.38 |

*See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3–4; Ex. D: Defs. Production at DEF0382–402.

Specifically, Uzowuru is entitled to minimum wage compensation in the amount of $596.63.  Further, because Uzowuru worked more than 40 hours during two weeks of his employment and was not paid any overtime, he is eligible for

overtime compensation in the amount of $87.75. *See* Naydenskiy Decl., Ex. D: Defs.

Production at DEF0384. The Court therefore concludes that Uzowuru should be

awarded $684.38.

### 4. Statutory Damages for Wage Statement and Notice Violations

#### a. Legal Standard

Plaintiffs also seek to recover damages for defendants' failure to provide wage

statements and wage notices as required by New York's Wage Theft Prevention Act

("WTPA"). Compl. ¶¶ 40, 44, 57–58; Pls. Mem. at 1,5; *see* NYLL § 195. The WTPA

requires employers to provide, "with every payment of wages," a statement that

lists the following:

> the dates of work covered by that payment of wages; name of
> employee; name of employer; address and phone number of
> employer; rate or rates of pay and basis thereof, whether paid by
> the hour, shift, day, week, salary, piece, commission, or other;
> gross wages; deductions; allowances, if any, claimed as part of
> the minimum wage; and net wages . . . . [T]he statement shall
> include the regular hourly rate or rates of pay; the overtime rate
> or rates of pay; the number of regular hours worked, and the
> number of overtime hours worked.

NYLL § 195(3).

The WTPA also requires that employers furnish each employee with a wage

notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by the
> hour, shift, day, week, salary, piece, commission, or other;
> allowances, if any, claimed as part of the minimum wage,
> including tip, meal, or lodging allowances; the regular pay day
> designated by the employer in accordance with section one
> hundred ninety-one of this article; the name of the employer;
> any "doing business as" names used by the employer; the
> physical address of the employer's main office or principal place

29

> of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a).

From April 9, 2011 to February 26, 2015: (1) "an employer's failure to provide proper wage statements 'was a violation for which plaintiffs could receive $100 per work week in damages, with a cap of $2,500'"; *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 511 (quoting *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016)); *see also* NYLL § 198(1-d) (effective April 9, 2011 to February 26, 2015); and (2) an employer's failure to provide a proper wage notice to an employee within ten business days of his first day of employment was a violation for which plaintiffs could receive $50 per work week in damages, with a cap of $2,500. *See Gamero*, 272 F. Supp. 3d at 510; *see also* NYLL § 198(1-b).

"Since February 27, 2015, an employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000, and an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing NYLL § 198(1-b), (1-d)).

## b.     Application

None of the plaintiffs ever received a wage statement with payments of wages during their employment, or a wage notice upon their hiring or anytime thereafter. Compl. ¶¶ 40, 44, 57–58; Pls. Mem. at 1, 5.

### i.     Sanchez's Statutory Damages

Sanchez was employed by defendants from April 26, 2012 to July 18, 2015. *See* Naydenskiy Decl., Ex. D: Defs. Production DEF0182–258.  For his employment between April 26, 2012 and February 26, 2015, Sanchez is entitled to the maximum award of $2,500 for defendants' wage statement violations and an additional maximum award of $2,500 for defendants' wage notice violations.[14]  In addition, for the 91 days of his employment between February 27 to July 18, 2015, Sanchez is entitled to the maximum award of $5,000 for defendants' wage statement violations[15] and an additional award of $4,550 (91 days x $50 per work day) for defendants' wage notice violations.[16]  These amounts total $14,550.  However,

---

[14]  Because this employment period spanned more than 25 weeks, Sanchez is entitled to wage statement damages in the full statutory amount of $2,500.  He is also entitled to wage notice damages in the full statutory amount of $2,500 because this employment period spanned more than 50 weeks.

[15]  Because this employment period spanned more than 20 days, Sanchez is entitled to wage statement damages in the full statutory amount of $5,000.

[16]  When wage notice violations have occurred during time periods both before and after February 27, 2015, when the law was amended, courts have awarded plaintiffs statutory damages at $50 per week, up to a maximum of $2,500 for violations that occurred before February 27, 2015, *and* $50 per work day, up to a maximum of $5,000 for violations that occurred after February 27, 2015.  *See, e.g., Cabrera v. N.Y. Fresh Meat Inc.*, No. 15-CV-1325 (GBD) (SDA), 2018 WL 3300647, at *8 (S.D.N.Y. Mar. 29, 2018) (separate amount awarded for employment on February

Sanchez's inquest submissions only sought $5,000 for defendants' wage statement and wage notice violations.  *See* Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 6.  Therefore, the Court awards him statutory damages in the amount of $5,000.

### ii.    Augustin's Statutory Damages

Augustin was employed from June 16, 2014 to March 8, 2015.  *See* Naydenskiy Decl., Ex. D: Defs. Production DEF0182–258.  Thus, for the 30 weeks of his employment between June 16, 2014 and February 26, 2015, Augustin is entitled to the maximum award of $2,500 for defendants' wage statement violations[17] and an additional $1,500 (30 weeks x $50 per work week) for defendants' wage notice violations.  In addition, for the eight days of his employment between February 27 to March 8, 2015, Santiago is entitled to $2,000 ($250 x 8 days) for defendants' wage statement violations and an additional $400 ($50 x 8 days) for defendants' wage notice violations. These amounts total $6,400.  However, Augustin's inquest submissions only sought $5,000 for defendants' wage statement and wage notice

27, 2015 in addition to maximum statutory amount of $2,500), *adopted by*, 2018 WL 2192187 (S.D.N.Y. May 14, 2018); *Reyes*, 2018 WL 614980, at *8 (maximum statutory amount of $5,000 awarded for violations on or after February 27, 2015 in addition to statutory damages for violations prior to February 27, 2015); *Cabrera v. 1560 Chirp Corp.*, No. 15-CV-8194 (TPG) (DF), 2017 WL 1289349, at *13 (S.D.N.Y. Mar. 6, 2017) (separate statutory damages awarded for wage violations that occurred both before and after February 27, 2015), *adopted by*, 2017 WL 1314123 (S.D.N.Y. Apr. 6, 2017).

[17]  Because this employment period spanned more than 25 weeks, Augustin is entitled to wage statement damages in the full statutory amount of $2,500.

violations. Naydenskiy Decl., Ex. C: Pls. Damage Calcs. at 3. Therefore, the Court awards him statutory damages in the amount of $5,000.

### iii. Newaz's Statutory Damages

Newaz was employed from February 6 to March 22, 2015. *See* Naydenskiy Decl., Ex. D: Defs. Production DEF0248–50, 258–62. Thus, for the two weeks of his employment between February 6 and February 26, 2015, Newaz is entitled to $200 ($100 x 2 weeks) for defendants' wage statement violations and an additional $100 ($50 x 2 weeks) for defendants' wage notice violations. In addition, for the five days of his employment between February 27 to March 22, 2015, Newaz is entitled to $1,250 ($250 x 5 days) for defendants' wage statement violations and an additional $250 ($50 x 5 days) for defendants' wage notice violations. The Court concludes that he is therefore entitled to statutory damages in the amount of $1,800.[18]

---

[18] Newaz requests $3,000 in statutory damages in his inquest submissions but this amount is not supported by the record. Naydenskiy Decl., Ex. C: Pls. Damage Calcs at 3. "[T]he amount of damages for [wage statement] and notice violations [Newaz] can recover . . . is dependent on the time periods during which the alleged wage and notice violations occurred." *Manswell v. Heavenly Miracle Academy Services, Inc.*, No. 14-CV-7114 (MKB) (SMG), 2017 WL 9487194, at *20 (E.D.N.Y. Aug. 23, 2017), *adopted by*, 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017) (quoting *Leevson v. Aqualife USA, Inc.*, 183 F. Supp. 3d 397, 408 (E.D.N.Y. 2016)). Plaintiffs' counsel does not treat Newaz's employment periods before and after February 27, 2015 differently for purposes of calculating statutory damages for wage statement and wage notice violations under NYLL. Even so, the calculation he used—$150 per week in damages for five weeks of employment—does not support a request for $3,000 in statutory damages.

#### iv.     Santiago's Statutory Damages

Santiago was employed from January 21 to April 18, 2015. *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0244–268. Thus, for the five weeks of his employment between January 21 and February 26, 2015, Santiago is entitled to $500 ($100 x 5 weeks) for defendants' wage statement violations and an additional $250 ($50 x 5 weeks) for defendants' wage notice violations. In addition, for the 23 days of his employment between February 27 to April 18, 2015, Santiago is entitled to the maximum award of $5,000 for defendants' wage statement violations[19] and an additional $1,150 ($50 x 23 days) for defendants' wage notice violations. The Court concludes that he is therefore entitled to statutory damages in the amount of $6,900.[20]

#### v.      Sillah's Statutory Damages

Sillah was employed for 98 days from June 24, 2016 to April 28, 2017. *See* Naydenskiy Decl., Ex. D: Defs. Production at DEF0338–380. Thus, he is entitled to the maximum award of $5,000 for defendants' wage statement violations[21] and

---

[19]  Because this employment period spanned more than 20 days, Santiago is entitled to wage statement damages in the full statutory amount of $5,000.

[20]  Santiago requests $7,200 in statutory damages in his inquest submissions but this amount is not supported by the record. Plaintiffs' counsel does not treat Santiago's employment periods before and after February 27, 2015 differently for purposes of calculating statutory damages for wage statement and wage notice violations under NYLL. Even so, the calculation he used—$150 per week in damages for 11 weeks of employment—does not support a request for $7,200 in statutory damages.

[21]  Because his employment period spanned more than 20 days, Sillah is entitled to damages in the full statutory amount of $5,000.

$4,900 (98 days x $50) for their wage notice violations.  The Court concludes that

Sillah is therefore entitled to statutory damages in the amount of $9,900 (the

amount sought in his submissions).

### vi.    Kim's Statutory Damages

Kim was employed for 45 days from April 4 to July 2, 2016.  *See* Naydenskiy

Decl., Ex. D: Defs. Production at DEF0324–336.  Thus, he is entitled to the

maximum award of $5,000 for defendants' wage statement violations[22] and $2,250

(45 days x $50) for their wage notice violations.  The Court concludes that Kim is

therefore entitled to statutory damages in the amount of $7,250 (the amount sought

in his submissions).

### vii.   Uzowuru's Statutory Damages

Uzowuru was employed for 80 days from March 2 to July 15, 2016.  *See*

Naydenskiy Decl., Ex. D: Defs. Production at DEF0382–390.  Thus, he is entitled to

the maximum award of $5,000 for defendants' wage statement violations[23] and

$4,000 (80 days x $50) for their wage notice violations.  The Court concludes that

Uzowuru is therefore entitled to statutory damages in the amount of $9,000 (the

amount sought in his submissions).

---

[22]  Because his employment period spanned more than 20 days, Kim is entitled to damages in the full statutory amount of $5,000.

[23]  Because his employment period spanned more than 20 days, Uzowuru is entitled to damages in the full statutory amount of $5,000.

### 5. Liquidated Damages

#### a. Legal Standard

Plaintiffs seek liquidated damages pursuant to both the FLSA and NYLL, but as the Court is awarding damages under state law, it looks solely to provisions of NYLL. Compl. ¶¶ 49, 55. Moreover, as is discussed below, courts in this Circuit no longer are permitted to award liquidated damages under both state and federal law.

NYLL entitles an employee to liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(l-a). This good-faith exception, which has been in effect since November 24, 2009, represents a change from the prior standard in which employees were entitled to damages only if they showed that the employer's violation "was willful." *Inclan v. N.Y. Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015). "The NYLL was further amended in 2010 to increase the liquidated damages award from 25% to 100% . . . ." *Garcia v. JonJon Deli Grocery Corp.,* No. 13-CV-8835 (AT), 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11, 2015) (citing *Gold v. N.Y. Life Ins. Co.,* 730 F.3d 137, 143 (2d Cir. 2013)); NYLL §§ 198(l-a), 663(1). The provision of liquidated damages under NYLL is "more generous than its federal counterpart" as it "applies to unpaid regular wages, unlawful withholdings from tips, and unpaid 'spread-of-hours' wages, in addition to unpaid overtime." *Gunawan v. Sake Sushi Rest.,* 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) (citing NYLL § 198).

"While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed 'to deter wage-and-hour violations in a manner calculated to compensate the party harmed.'" *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) (citing *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016), *adopted by*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016)).  The Second Circuit has recently held that cumulative liquidated damages awards, one under the FLSA and another under NYLL, are impermissible.  *See Rana*, 887 F.3d at 122 ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").  "While an award of duplicative liquidated damages under the FLSA and NYLL is prohibited, courts within this Circuit have allowed recovery under the statute that provides the greatest relief." *Rosales v. Low Bid, Inc.*, No. 17-CV-3183 (ADS) (SIL), 2018 WL 3468710, at *9 (E.D.N.Y. July 3, 2018) (internal citation omitted), *adopted by*, 2018 WL 3468697 (E.D.N.Y. July 18, 2018).

### b.   Application

Given defendants' default and failure to rebut plaintiffs' allegations that NYLL violations were willful, the Court concludes that plaintiffs are entitled to liquidated damages.  *Xochimitl*, 2016 WL 4704917, at *15 ("Courts deem defendants' action willful where they have defaulted and . . . such defaulting

defendants will have obviously made no showing of good faith.") (internal alterations, citations, and quotation marks omitted). Consequently, the Court concludes that plaintiffs are entitled to liquidated damages in the amount of 100 percent of unpaid wages, including both minimum and overtime wages.

Plaintiffs are thus entitled to liquidated damages in the following amounts based on their unpaid wage awards discussed above:

| Plaintiffs | Unpaid Minimum Wages | Unpaid Overtime Compensation | Liquidated Damages |
|---|---|---|---|
| Sanchez | $13,946.19 | $6,263.94 | $20,210.13 |
| Augustine | $3,626.81 | $653.38 | $4,280.19 |
| Newaz | $315.94 | | $315.94 |
| Santiago | $1,401.56 | | $1,401.56 |
| Sillah | $1,431.13 | | $1,431.13 |
| Kim | $401.63 | | $401.63 |
| Uzowuru | $596.63 | $87.75 | $684.38 |
| | | | |
| **TOTALS** | **$21,719.89** | **$7,005.07** | **$28,724.96** |

6. **Interest**

Although they sought prejudgment and post-judgment interest in their prayer for relief in the complaint (Compl. at 13), plaintiffs fail to pursue this relief in their motion or accompanying memoranda of law (Dkt. Nos. 79, 84). As such, the request for prejudgment interest is deemed abandoned. *See, e.g., Reyes v. Art Tek Design, Ltd.*, No. 16-CV-5168 (ADS) (AYS), 2018 WL 614980, at *10 (E.D.N.Y. Jan. 11, 2018), *adopted by*, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); *Maldonado v. Landzign Corp.*, No. 15-CV-3054 (DRH) (GRB), 2016 WL 4186815, at n.3 (E.D.N.Y. July 14, 2016); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015).

However, "[u]nlike prejudgment interest, plaintiffs are entitled to post-judgment interest on all money awards as a matter of right." *Tacuri*, 2015 WL 790060, at *12 (citations omitted). According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." "An award of post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961." *Tacuri*, 2015 WL 790060, at *12 (citing *Cappiello v. ICD Publications*, 868 F. Supp. 2d 55, 63–64 (E.D.N.Y. 2012)). Therefore, despite plaintiffs' failure to renew this request in their instant motion, the Court awards plaintiffs post-judgment interest on all sums awarded, including attorneys' fees and costs, commencing when the Clerk of the Court enters judgment until the date of payment. *See, e.g., Gamble v. E. Bronx N.A.A.C.P. Day Care Center, Inc.*, No. 04-CV-1198 (KMW) (HBP), 2008 WL 2115237, at *2 (S.D.N.Y. May 15, 2008).

### 7.    Attorneys' Fees

#### a.    Legal Standard

Plaintiffs seek attorneys' fees in the amount of $22,790 and costs in the amount of $1,606.04. Pls. Mem. at 8; Naydenskiy Decl. ¶ 6, Ex. E: Naydenskiy Law Group Time Records and Costs ("Pls. Time Records") at 24, Dkt. No. 85-11.[24]  Both the FLSA and NYLL are fee-shifting statutes that entitle prevailing plaintiffs to reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 198(l-a); *see, e.g., Gurung v. Malhotra,* 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012).

---

[24]  Pin cites to Exhibit E of the Naydenskiy Declaration refer to the pagination of the document as they appear on the ECF filing because the original document does not have page numbers.

"In order to determine the appropriate fee award, courts typically start by determining the so-called lodestar amount, or 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *13 (S.D.N.Y. Aug. 20, 2014), *adopted by*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (citing *Millea v. Metro-North R.R.,* 658 F.3d 154, 166 (2d Cir. 2011)).  As a general matter, "[b]oth the [Second Circuit] and the Supreme Court have held that the lodestar . . . creates a presumptively reasonable fee." *Gurung,* 852 F. Supp. 2d at 596 (quoting *Millea,* 658 F.3d at 166) (alteration in original); *see also Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *10 (S.D.N.Y. Aug. 2, 2012), *adopted by*, Order dated Dec. 14, 2012 (Dkt. No. 39).

Plaintiffs must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N. Y. State Assn'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of N.Y.,* 626 F.3d 130, 132 (2d Cir. 2010).  "[T]he 'burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Angamarca,* 2012 WL 3578781, at *11 (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)).  A court may also rely on its own knowledge of local comparable rates. *See Yuquilema*, 2014 WL 4207106, at *13; *Adorno v. Port Authority of N.Y. & N.J.,*

685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010). Counsel for the prevailing party must submit evidence in support of the proposed figures and make a good faith effort to exclude excessive, redundant, or unnecessary hours from the fee request. *Quaratino v. Tiffany & Co.*, 166 F. 3d 422, 426 n.6 (2d Cir. 2008). Ultimately, a court's discretion to set a fee award is broad. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1989); *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 64 (2d Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and . . . what essentially are factual matter.") (internal citations and quotation marks omitted).

### i. Reasonable Hourly Rate

"'The reasonable hourly rate is the rate a paying client would be willing to pay,' bearing in mind that a 'reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Yuquilema,* 2014 WL 4207106, at *13 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 190 (2d Cir. 2008)). "To assess the reasonable rate, the Court considers the prevailing market rates 'for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *See Maldonado,* 2012 WL 1669341, at *12 (quoting *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)).

"Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases." *Surdu v. Madison Global, LLC*, No. 15-CV-6567 (HBP), 2018 WL 1474379, at *10

(S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience). "Associates with at least four years of experience . . . are typically awarded fees of about $200 to $275 per hour." *Siegel v. Bloomberg L.P.,* No. 13-CV-1351 (DF), 2016 WL 1211849, at *6 (S.D.N.Y. Mar. 22, 2016) (citing *Rios v. Louya Corp.*, No. 14-CV-6800 (GHW), 2015 WL 5918194, at *4 (S.D.N.Y. Oct. 8, 2015) ($225 per hour to attorney with six years' experience); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344 (MHD), 2015 WL 3536593, at *2 (S.D.N.Y. June 5, 2015) ($275 hourly rate is reasonable for attorney with four to six years of experience); *Agudelo v. E & D LLC*, No. 12-CV-960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) ($200 per hour to associate with three years' experience in action for unpaid wages)). Counsel with less experience are typically awarded lower hourly rates between $150 and $200 per hour. *See, e.g., Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (collecting cases). "A reasonable hourly rate for paralegal or legal assistant work is $75 per hour." *See, e.g., Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816 (PAE), 2016 WL 7048714, at *4 (S.D.N.Y. Dec. 2, 2016) (alteration omitted); *see also Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172, at *2 (S.D.N.Y. Dec. 15, 2015) (same).

In "determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys." *Harris v. Fairweather,* No. 11-CV-2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012) (reducing fee award where "documents that counsel submitted in

connection with the inquest were mediocre, included numerous errors, and failed to cite to authority for much of the relief requested"), *adopted by,* 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); *Poparic v. European Music & Video Store,* No. 08-CV-2081, 2009 WL 6318212, at *9 (E.D.N.Y. Dec. 16, 2009) ("[W]hile attorneys with similar numbers of years experience . . . may occasionally garner higher fees, the sub-par quality of the legal work in this case warrants a lower hourly rate.").

Plaintiffs seek to recover fees for work performed by two attorneys: Gennadiy Naydenskiy and Alex Markhasin; as well as fees for administrative work. Pls. Mem. at 6–8; Naydenskiy Decl., Ex. E: Pls. Time Records at 22. Naydenskiy graduated from law school and was admitted to practice in 2013. Pls. Mem. at 6–7.[25] He founded Naydenskiy Law Group in 2014 and his practice focuses on wage-and-hour litigation. *Id.* at 7. In support of his requested $350 hourly rate, Naydenksiy cites to a case in which a partner with more than 20 years of experience was awarded fees at an hourly rate of $375. Pls. Mem. at 7 (citing *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2010)). Given counsel's limited experience as well as numerous errors in his inquest submissions, the Court

---

[25] Plaintiffs have provided this information solely in their memorandum of law. They do not provide sworn testimony concerning their legal experience or hourly rates (despite the fact that Naydenskiy did submit a declaration in support of plaintiffs' motion). It is well-settled that "[a]n attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009). It would have been preferable for plaintiffs' counsel to have included all of this factual information (bar admission dates, hourly rates, etc.) in the form of a declaration or affidavit. Nonetheless, the Court will reluctantly credit the information provided at this time to avoid additional delay. Counsel should make any application for fees in future cases in the proper form.

reduces his hourly rate to $200. In a similar wage-and-hour default case, this Court awarded $200 per hour to a solo practitioner who had five years of experience (the same as Naydenskiy). *See Schalaudek v. Chateau 20th Street LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544 (S.D.N.Y. Feb. 24, 2017), *adopted as modified*, 2017 WL 1968677 (S.D.N.Y. May 11, 2017). Notably, Naydenskiy was recently awarded a $200 hourly rate in a case in the Eastern District of New York. *See Sermuks v. Orion Caterers, Inc.*, No. 15-CV-461 (RJD) (RML), 2017 WL 1058479, at *8 (E.D.N.Y. Feb. 2, 2017) (awarding Naydenskiy $200 hourly rate in 2017 for "relatively straightforward wage and hour default"), *adopted by*, 2017 WL 1058479 (E.D.N.Y. Feb. 2, 2017).

Markhasin graduated from law school in 2013 and was admitted to practice in 2014. Pls. Mem. at 7. At all relevant times, he was an associate at Naydenskiy Law Group and "handle[d] employment law matters" and "transactional matters." *Id.* at 7–8. Markhasin requested a hourly rate of $150. *Id.* at 7. Given Markhasin's level of experience as a junior associate, the Court finds his requested rate appropriate in this case. *See, e.g., Baltierra*, 2015 WL 5474093, at *13 (citing *Alvarez v. 215 N. Ave. Corp.*, No. 13-CV-3629, 2015 WL 3757069, at *22 (S.D.N.Y. June 19, 2015) (approving junior associate rates of $150 per hour)). The Court also finds that plaintiffs' requested rate of $75 per hour for administrative work is reasonable. Naydenskiy Decl., Ex. E: Pls. Time Records at 22; *Escobar*, 2016 WL 7048714, at *4.

## ii.    Reasonable Hours Expended

"After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended." *Maldonado,* 2012 WL 1669341, at *13 (internal quotation marks omitted).  In determining the reasonable number of hours required by a case, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992).  Courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994).

Plaintiffs have provided the Court with their time records, which include hours expended, dates of work, and brief descriptions of the tasks performed. Naydenskiy Decl., Ex. E: Pls. Time Records at 20–24.  Having carefully reviewed these records, the Court finds the number of hours for which counsel requests compensation to be reasonable.  Thus, the Court awards counsel the full amount of hours worked—54.1 hours for Naydenskiy, 20.7 hours for Markhasin, and 10 hours for administrative work.[26]

---

[26]  Although Naydenkiy reports working 58.2 hours in plaintiffs' memorandum of law (Pls. Mem. at 7), the actual sum of his hours worked based on plaintiffs' time records (Naydenskiy Decl., Ex. E: Pls. Time Records at 20–24) is 54.1.  Therefore, the Court uses 54.1 hours to calculate Naydenskiy's fees.  In addition, Markhasin reports working 20.6 hours in plaintiffs' memorandum (Pls. Mem. at 8), but the actual sum of his hours worked based on plaintiffs' time records (Naydenskiy Decl., Ex. E: Pls. Time Records at 21–22) is 20.7.  Despite plaintiffs' error, the Court uses 20.7 hours to calculate Markhasin's fees because it is supported by the underlying time records.

Thus, the Court awards Naydenskiy Law Group $14,675 in fees, at $200 per hour for Naydenskiy's 54.1 hours of work ($10,820), plus $150 per hour for Markhasin's 20.7 hours of work ($3,105), as well as $75 per hour for 10 hours of administrative work ($750).

### 8. Costs

Plaintiffs also seek $1,606.04 in costs resulting from the $400 filing fee, $80 to effect service, $487.34 for postage and photocopying, and $638.70 for translations of the collective notice from English to Spanish and Korean. *See* Naydenskiy Decl., Ex. E: Time Records and Costs at 23–24. "An employee who prevails in a wage-and-hour action is entitled to recover costs." *Xochimitl*, 2016 WL 4704917, at *22 (citing 29 U.S.C. § 216(b); NYLL § 663(1)). "Costs are defined as 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Id.* (quoting *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "As with attorneys' fees, [a] requesting party must substantiate the request for costs." *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also, e.g., Euceda v. Preesha Operating Corp.*, No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs . . . . . Plaintiff has failed to provide substantiation, such as invoices or receipts, documenting the costs he now seeks to recover."), *adopted by*, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Plaintiffs have not submitted receipts for any of the expenses totaling $1,606.04. While the Court takes judicial notice of the $400 filing fee, *see, e.g.,*

*Sevilla v. Nekasa Inc.*, No. 16-CV-2368 (AJP), 2017 WL 1185572, at *8 (S.D.N.Y. Mar. 30, 2017) (taking judicial notice of filing fee), it will not award costs for service of process, postage and photocopying, and translator services, without supporting documentation. *See, e.g., Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018) ("the Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs."), *adopted by*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); *Lee v. Santiago*, No. 12-CV-2558 (PAE) (DF), 2013 WL 4830951, at *14 (S.D.N.Y. Sept. 10, 2013) (request for costs such as postage and copying denied without additional evidence or substantiation). Therefore, the Court awards costs in the amount of $400.

### III.  Conclusion

For the foregoing reasons, plaintiffs' motion to strike defendants' answer and for default judgment against defendants is granted. Having conducted an inquest, the Court awards plaintiffs damages in the amount of $102,299.92, attorneys' fees and costs in the amount of $15,075, and post-judgment interest on all sums awarded against defendants.

Specifically, the $102,299.92 in damages should be distributed as follows: Marco Antonio Sanchez is entitled to $20,210.13 in unpaid wages, an equal amount in liquidated damages, and $5,000 in statutory damages; Levon Augustin is entitled to $4,280.19 in unpaid wages, an equal amount in liquidated damages, and $5,000 in statutory damages; Ewad Newaz is entitled to $315.94 in unpaid wages, an equal

amount in liquidated damages, and $1,800 in statutory damages; Jeffrey Santiago is entitled to $1,401.56 in unpaid wages, an equal amount in liquidated damages, and $6,900 in statutory damages; Mahamaduo Sillah is entitled to $1,431.13 in unpaid wages, an equal amount in liquidated damages, and $9,900 in statutory damages; Hyun Jun Kim is entitled to $401.63 in unpaid wages, an equal amount in liquidated damages, and $7,250 in statutory damages; and Augustine Uzowuvu is entitled to $684.38 in unpaid wages, an equal amount in liquidated damages, and $9,000 in statutory damages.

The Clerk is respectfully directed to close Docket No. 78 and mark it as granted, and to enter judgment for the plaintiffs consistent with this Opinion.

**SO ORDERED.**

Dated: New York, New York
      September 20, 2018

_____
JAMES L. COTT
United States Magistrate Judge

**Appendix**

*Sanchez v. Jyp Foods Inc. et al*
No. 16-CV-4472 (JLC)

Plaintiffs' calculations:

| Plaintiffs | Amount Sought | Basis | | |
|---|---|---|---|---|
| | | Unpaid Wages | Liquidated Damages | Statutory Damages |
| Marco Antonio Sanchez | $46,105.72 | $20,552.86 | $20,552.86 | $5,000 |
| Levon J. Augustin | $14,261.25 | $4,630.63 | $4,630.63 | $5,000 |
| Emad Newaz | $3,631.88 | $315.94 | $315.94 | $3,000 |
| Jeffrey Santiago | $10,003.12 | $1,401.56 | $1,401.56 | $7,200 |
| Mahamaduo Sillah | $12,762.25 | $1,431.13 | $1,431.13 | $9,900 |
| Hyun Jun Kim | $8,053.26 | $401.63 | $401.63 | $7,250 |
| Augustine Uzowuru | $10,368.75 | $684.38 | $684.38 | $9,000 |
| | | | | |
| Total Damages | $105,186.23 | | | |
| Attorneys' Fees and Costs | $24,396.04 | | | |
| **GRAND TOTAL** | **$129,582.27** | | | |

Court's calculations:

| Plaintiffs | Amount Awarded | Basis | | |
|---|---|---|---|---|
| | | Unpaid Wages | Liquidated Damages | Statutory Damages |
| Marco Antonio Sanchez | $45,420.26 | $20,210.13 | $20,210.13 | $5,000 |
| Levon J. Augustin | $13,560.38 | $4,280.19 | $4,280.19 | $5,000 |
| Emad Newaz | $2,431.88 | $315.94 | $315.94 | $1,800 |
| Jeffrey Santiago | $9,703.12 | $1,401.56 | $1,401.56 | $6,900 |
| Mahamaduo Sillah | $12,762.26 | $1,431.13 | $1,431.13 | $9,900 |
| Hyun Jun Kim | $8,053.26 | $401.63 | $401.63 | $7,250 |
| Augustine Uzowuru | $10,368.76 | $684.38 | $684.38 | $9,000 |
| | | | | |
| Total Damages | $102,299.92 | | | |
| Attorneys' Fees and Costs | $15,075.00 | | | |
| **GRAND TOTAL** | **$117,374.92** | | | |